# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Blue Samsung Cellular Phone<br>Model SM-J410G<br>IMEI No. 351823090946567 | )<br>)<br>)  Case No. **21-MJ-0706**<br>)<br>)<br>) |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;
  ☑ contraband, fruits of crime, or other items illegally possessed;
  ☑ property designed for use, intended for use, or used in committing a crime;
  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC sec. 952, 960 | Importation of Controlled Substances |
| 21 USC sec. 963 | Conspiracy |

The application is based on these facts:
See Attached Affidavit of HSI Special Agent Nicholas A. Zelinsky, incorporated herein by reference.

  ☐ Continued on the attached sheet.
  ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: ____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Nick Zelinsky*
*Applicant's signature*

Special Agent Nicholas A. Zelinsky, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: 02/23/2021

*William V. Gallo*
*Judge's signature*

City and state: San Diego, California

Hon. William V. Gallo, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Special Agent Nicholas A. Zelinsky, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> Blue Samsung Cellular Phone
> Model SM-J410G
> IMEI No. 351823090946567
> (the "Target Device")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Edward Rivera ("Defendant") for importing approximately 183.22 kilograms (403.93 pounds) of methamphetamine from Mexico into the United States. The Target Device is currently in the evidence vault located at 880 Front Street, San Diego, CA 92101.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Device, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am a Special Agent (SA) with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), Costa Pacifico Money Laundering Task Force Group 2, in San Diego, California and I have been employed with HSI since 2018. My current responsibilities include conducting criminal investigations of money laundering, narcotics smuggling and bulk cash smuggling of illicit proceeds on the Southwest Border. I am a "law enforcement officer of the United States" under 18 U.S.C. § 2510(7), empowered to investigate and make arrests for offenses enumerated in 18 U.S.C.

§ 2516. I also regularly work with other state and federal law enforcement partners including, but not limited to, the Federal Bureau of Investigation (FBI), the Bureau of Alcohol, Tobacco and Firearms and Explosives ("ATF") and the Drug Enforcement Administration ("DEA").

4. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator's Training Program (CITP) as well as the HSI Special Agent Training Academy (HSISAT). Prior to becoming a SA, I was employed with the Mississippi Bureau of Narcotics (MBN) as a Narcotics Agent. I am a graduate of the Mississippi Law Enforcement Officer's Training Academy (MLEOTA), the MBN State Police Academy, and have taken multiple courses in interrogation, narcotics investigations, and undercover investigations. During the course of my employment with MBN I conducted multiple criminal investigations involving illicit narcotics distribution and trafficking, organized criminal activity, money laundering and firearms trafficking as well as acted in an undercover capacity in multiple investigations to include illicit narcotics distribution as well as firearms trafficking. I have participated in investigations, which have resulted in criminal prosecutions. Additionally, I have made arrests, drafted affidavits, for search and seizure warrants, arrest warrants, prepared reports in state and federal proceedings, and have provided sworn statements in state and federal proceedings.

5. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in narcotics trafficking investigations, I am aware that individuals engaged in drug trafficking commonly store photos and videos on their cell phones that reflect or show co-conspirators and associates

engaged in drug trafficking, as well as images and videos of drugs or contraband, proceeds and assets from drug trafficking, and communications to and from recruiters and organizers.

6. I am aware that a common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles that enter the United States at Ports of Entry such as the San Ysidro Port of Entry and the Otay Mesa Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver") responsible for driving the vehicle containing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver to remotely monitor the progress of the narcotics, provide instructions to the driver and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

7. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular

telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

8. At about 3:37 p.m. on February 18, 2021, Defendant applied to enter the United States, driving a 2001 Ford Expedition and towing a flatbed trailer into the Otay Mesa, California, Port of Entry. Defendant was the driver and sole occupant of the Ford Expedition. The Ford Expedition bore California license plates, and the flatbed trailer bore a Mexican license plate.

9. When Defendant entered the Port of Entry, he provided two negative declarations to a Customs and Border Protection Officer. Defendant also said that he was crossing the border to go to San Ysidro. The CBP Officer then referred the Ford Expedition and flatbed trailer to the secondary inspection area.

10. In secondary inspection, a K-9 Unit sniffed and alerted on the rear floor bed of the flatbed trailer. CBP Officers then conducted a physical inspection of the trailer and found 175 packages of a substance that tested presumptively positive for methamphetamine, with a gross weight of 183.22 kilograms (403.93 pounds). These packages were hidden underneath a false-bottom floor of the trailer.

11. Following the discovery of the packages of methamphetamine, CBP Officers placed Defendant under arrest. CBP Officers also seized the Expedition, the flatbed trailer, the methamphetamine, and the Target Device. CBP Officers found the Target Device in the Ford Expedition; though CBP Officers did not find the Target Device on Defendant's person, I note that Defendant was the driver and sole occupant of the Ford Expedition at the time he entered the United States.

12. Following the arrest, HSI Special Agents interviewed Defendant, who received and waived his *Miranda* rights. In substance, Defendant denied knowledge of the drugs in the flatbed trailer and said he was taking the Expedition and the flatbed trailer to Tello's Parking Lot in Otay Mesa, California. During the interview, the Target Device rang and Defendant answered it; from the conversation, it appeared to the Special Agents that Defendant recognized the voice of the person who had called him. I infer that this is confirms Defendant was the user of the Target Device.

13. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will

continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Here, for example, Defendant claimed that he bought the Target Device just three days before his arrest. Accordingly, I request permission to search the Target Device for data beginning on December 18, 2020, up to and including February 18, 2020.

## METHODOLOGY

14.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the

1 results using digital photography. This process is time and labor intensive and may take
2 weeks or longer.
3     15. Following the issuance of this warrant, I will collect the Target Device and
4 subject it to analysis. All forensic analysis of the data contained within the telephone and
5 its memory cards will employ search protocols directed exclusively to the identification
6 and extraction of data within the scope of this warrant.
7     16. Based on the foregoing, identifying and extracting data subject to seizure
8 pursuant to this warrant may require a range of data analysis techniques, including manual
9 review, and, consequently, may take weeks or months. The personnel conducting the
10 identification and extraction of data will complete the analysis within 90 days, absent
11 further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

13     17. Investigators have not previously tried to obtain the evidence in this warrant.
14 As noted, investigators are aware that Defendant answered his phone during the course of
15 his post-arrest interview, and take this as evidence that Defendant is the user of the Target
16 Device. Apart from the fact of Defendant answering the phone, I have not relied on any
17 evidence about the Target Device in this affidavit.

## CONCLUSION

19     18. Based on the facts and information set forth above, I submit there is probable
20 cause to believe that a search of the Target Device will yield evidence of Defendant's
21 violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I
22 request that the Court issue a warrant authorizing law enforcement to search the item
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

described in Attachment A and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Nick Zelinsky*
Special Agent Nicholas A. Zelinsky
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 23rd day of February, 2021.

*William V. Gallo*
The Honorable William V. Gallo
United States Magistrate Judge

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Blue Samsung Cellular Phone
>
> Model SM-J410G
>
> IMEI No. 351823090946567
>
> (the "Target Device")

The Target Device is currently in the possession of Homeland Security Investigations, 880 Front Street, San Diego, CA 92101.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of December 18, 2020, up to and including February 18, 2021:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.